CHARLES B. BRETZFELDER AND LEON TUCHMANN, AS EXECUTORS OF THE ESTATE OF MORRIS WEINSTEIN, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 47189. Promulgated February 26, 1935.

*Charles B. Bretzfelder, Esq.*, pro se.
*W. E. Davis, Esq.*, for the respondent.

OPINION.

Matthews: Respondent determined a deficiency in estate tax of $18,003.74. The decedent died on June 4, 1925, and the Revenue Act of 1924 is therefore applicable. A number of errors were alleged in the petition, but all save three of these were adjusted by a stipulation between the parties and effect will be given thereto in the recomputation. The three issues before us are:

(1) Whether petitioners are entitled to deductions for payments of amounts pledged by decedent during his lifetime to the Palestine Orphan Asylum and Jewish Maternity Hospital; (2) whether certain real property in New York was includable in decedent's gross estate as being subject to administration expenses; and (3) whether petitioners are entitled to additional deductions for executors' commissions which would have been allowable if certain land had been included in gross estate by the state Surrogate's Court. The facts concerning these issues were stipulated.

1. The decedent during his lifetime pledged to the Palestine Orphan Asylum a sum in excess of $750, upon which a balance remained unpaid at his death of $750. The petitioners examined the merits of the contract and, concluding upon the advice of counsel that it was legally enforceable, they paid the sum of $750 to the Palestine Orphan Asylum on March 10, 1926. This payment was included by them in their account rendered to the New York Surrogate's Court and was approved by that court.

The decedent during his lifetime pledged to the Jewish Maternity Hospital the sum of $1,000, which remained unpaid at the time of his death, and the petitioners, upon advice of counsel that the pledge was legally enforceable, paid this sum to the hospital on December 3, 1927.

2. The decedent was the owner in fee at the time of his death of certain real estate located in the State of New York of the value of $340,000, as determined by respondent.

Decedent's personal property had a value at his death of $1,429,239.50 and his debts, funeral and administration expenses and bequests were determined to be $558,187.31.

3. Respondent determined the decedent's gross estate for estate tax purposes to be $1,769,239.50. The gross estate as accounted for by the executors to the Surrogate's Court of the State of New York, New York County, was $1,414,199.82. The gross estate for Federal estate tax purposes included real estate owned by the decedent and situate as follows: At 195 Sixth Avenue of the value of $35,000; at 2138 Madison Avenue of the value of $5,000; and at 86 West 119th Street of the value of $250,000; a total of $290,000. This sum, repre-

148

senting these three pieces of realty, was not included in the gross estate as accounted for to the Surrogate's Court.

There was allowed to the petitioners as executors on their accounting by the Surrogate's Court the sum of $56,607.98 as commissions, which sum was computed upon the basis of an estate amounting to $1,414,199.82 of principal, as accounted for to the said court and which did not include the principal value of the real estate.

The value of the property included in the decedent's gross estate as accounted for to the Surrogate's Court, other than the real estate above mentioned, was increased by the respondent by the sum of $65,039.68. The petitioners, as executors, would accept additional commissions should any be allowed.

Respondent filed no brief.

1. The first question is whether the $750 pledged by the decedent to the Palestine Orphan Asylum as part of a larger sum, and paid after his death by his executors, the petitioners, is deductible; and whether the sum of $1,000 pledged by the decedent to the Jewish Maternity Hospital, and also paid after his death, is deductible.

The relevant provisions of the Revenue Act of 1924 are section 303 (a) (1) and (3). Both of these sums were paid by the petitioners on the advice of counsel as enforceable claims against the estate. On this account, presumably, petitioners contend that they are deductible as " claims." We think they have misconceived the intendment of the statute which allows the deduction of claims only if they have been incurred " for a fair consideration in money or money's worth." The intention of Congress here is made even more explicit by the substitution in the corresponding provision of the 1926 Revenue Act of the words, " for an adequate and full consideration in money or money's worth." The statute does not say that claims shall be deductible if they are merely valid under local law. Congress obviously did not intend to make " consideration ", as it is understood at common law or by the law of any particular state, critical of exclusion, but to restrict deductions to " claims " representing bona fide financial transactions. *Porter* v. *Commissioner*, 60 Fed. (2d) 673; *Latty* v. *Commissioner*, 62 Fed. (2d) 952; *Glaser* v. *Commissioner*, 69 Fed. (2d) 254, affirming this Board in 27 B. T. A. 313; certiorari denied, 292 U. S. 654; rehearing denied October 8, 1934.

We are of the opinion that these amounts paid to the asylum and hospital were not deductible as " claims " under subsection (1). It remains to inquire whether they are any the more deductible under subsection (3) as " bequests, legacies, devises or transfers * * * for religious, charitable * * * purposes ", within the meaning of section 303 (a) (3). We think not. The petitioners put in no

evidence to show the character of the donee institutions, and the burden of proof rests on the petitioners. *Porter* v. *Commissioner*, *supra; Estate of Edward Moore*, 21 B. T. A. 279; *Estate of Clinton H. Scovell*, 30 B. T. A. 679. Moreover, there is grave doubt whether such promises as those here would come within the meaning of "bequests, legacies, devises or transfers" as used in subsection (3). *Glaser* v. *Commissioner*, *supra*. These two deductions must therefore be denied.

2. The next question is whether under New York law the decedent's real property in that state was "subject to the payment of the charges against his estate and the expenses of its administration", within the meaning of section 302 (a), so as to bring it within his gross estate. The petitioners rely on *Crooks* v. *Harrelson*, 282 U. S. 55, and contend that the New York law brings them within the ambit of that rule.

At date of death of the decedent the New York Surrogate's Court Act provided in part as follows:

Sec. 233—The real property, or interest in real property, of which a decedent died seized, may be disposed of as prescribed in this article * * *.

Sec. 234—The real property specified in the preceding section may be mortgaged, leased, or sold for any or all of the following purposes:

1. For the payment of the debts of the decedent, including judgment or other liens, excepting mortgage liens, existing thereon at the time of his death.

2. For the payment of his funeral expenses. * * *

3. For the payment of the reasonable expenses of administration as allowed by the Surrogate.

4. For the payment of any transfer tax assessed upon the transfer of such property.

5. For the payment of any debt or legacy charged thereupon.

No mortgage, lease or sale shall be ordered for the purpose of any of the foregoing payments, if there be personal property applicable to the full payment and discharge thereof.

In the face of so unequivocal a statutory rule, the petitioners could scarcely contend that the decedent's real property may not be sold to pay the expenses of his estate's administration, and they do not do so; but they contend that the words of the revenue act used in defining the gross estate "subject to the * * * expenses of its administration" do not apply unless the real property of the particular decedent would actually have to be sold, because of the insufficiency of his personalty, to pay the expenses of administration; and that here the facts admittedly show that the decedent's personalty was ample to pay all such expenses. Assuming that the New York statute intends personalty to be used first for the payment of administration expenses, *Kingsland* v. *Murray*, 133 N. Y. 170, 174; it is equally clear that where the personalty is insufficient, realty may be sold to pay administration expenses. The courts have allowed the

sale of a New York decedent's land to pay administration expenses even when incurred in proceedings for the estate in another state. *In re Green's Estate*, 130 Misc. 789; 226 N. Y. S. 436. So that the only question is, whether the priority of liability of the decedent's personalty under New York law is sufficient to exclude his realty from the decedent's gross estate for Federal tax purposes, if under the facts of the particular case it appears that administration expenses can in fact be fully satisfied out of the personalty.

We think such a reading of the revenue act is a perversion of its whole intendment. The revenue act uses the phrase, "subject to" which is unambiguous. The New York realty here was clearly "subject to" the payment of administration expenses under New York law, and it is immaterial that it might not actually be used for that purpose until after exhaustion of the decedent's personalty. Cf. *Estate of Edward M. Marble*, 26 B. T. A. 26; affd., 64 Fed. (2d) 745. See also *First Trust Co. of Omaha* v. *Allen*, 60 Fed. (2d) 812.

We are of the opinion, therefore, that the decedent's real property in New York was includable in his gross estate for Federal tax purposes.

3. Petitioner's final contention, which appears to be made alternatively to the contention just considered, is that if the decedent's New York realty is includable in his gross estate, commissions in respect of the administration of such property by the petitioners and in addition to the executors' commissions already allowed by the Surrogate's Court, should be allowed as a deduction from the gross estate under section 303 (a) (1). The value of the corpus of the estate exclusive of the realty, the commissions thereon allowed the petitioners as executors by the Surrogate's Court, the value of the realty in question, and the excess of value of the personalty as determined by the respondent over and above the value found by the Surrogate's Court, have all been stipulated by the parties. No evidence was put in by the petitioners as to the amount of additional commissions allowable on the realty, but this statement is made in their brief:

Sec. 285 of the New York Surrogate's Court Act authorizes the payment of commissions to be allowed on the settlement of the personal representatives' accounting. That the petitioners herein will be allowed commissions on the real property in their representative capacity as trustees cannot be denied by the respondent. In fact, there is now pending in the New York Surrogate's Court a proceeding for the settlement of the petitioner's accounts as trustee and as part of said proceedings there will be allowed commissions upon the administration of the real property hereinbefore set forth.

Under section 303 (a) (1) deduction is allowed of "administration expenses." This includes executors' commissions actually paid, or already determined under local law and to be paid in due course.

There is no evidence to show that under New York law any additional commissions are allowable by the Surrogate's Court to the petitioners in their capacity as executors. The statements in petitioners' brief quoted above are not based on any facts in the record. Furthermore, the facts as stated do not show that petitioners, as executors, will be allowed any additional commissions.

The petitioners contend further, however, that the respondent should allow additional deductions for executors' commissions computed by the rates of New York law and to the extent of the excess of the respondent's valuation of the personalty over that fixed by the New York Surrogate's Court. The statute allows the deduction of " administration expenses." This can properly mean only actual administration expenses, not imaginary expenses which would have to be paid had the state Surrogate's Court found a higher value than it did. Taxation is a practical matter and is concerned with actualities. The petitioners are entitled to deduct only so much as " administration expenses " as was actually paid out by them as such. This is not a case of additional administration expenses for which the executors are liable, and which they must pay in the future but have not yet paid. That situation is clearly distinguishable. Cf. *Irving Bank-Columbia Trust Co. et al., Executors*, 16 B. T. A. 897; *Arthur M. Lamport et al., Executors*, 28 B. T. A. 862.

This claim must also be rejected.

*Judgment will be entered under Rule 50.*